## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **MARK FOUST II,** | ) | **Case No.** |
| **c/o David B. Malik** | ) | |
| **Attorney at Law** | ) | **JUDGE** |
| **8437 Mayfield Rd. Suite 101** | ) | |
| **Chesterland, OH  44026,** | ) | |
| | ) | **COMPLAINT WITH JURY** |
| **Plaintiff,** | ) | **DEMAND** |
| **v.** | ) | |
| | ) | |
| **CITY OF TWINSBURG** | ) | |
| **10075 Ravenna Road** | ) | |
| **Twinsburg, Ohio 44087** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| | ) | |
| **SERGEANT MARK KREIGER** | ) | |
| **DETECTIVE BRIAN DONATO** | ) | |
| **DETECTIVE ALAN TERNOSKY** | ) | |
| **PTL. KREJCI** | ) | |
| **JOHN DOES #1-4** | ) | |
| **c/o Twinsburg Police Department** | ) | |
| **10075 Ravenna Road** | ) | |
| **Twinsburg, OH 44087** | ) | |
| | ) | |
| **Individually and in Their Official** | ) | |
| **Capacities as Employees of the City of** | ) | |
| **Twinsburg, Ohio,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

)
)

## I.   **PRELIMINARY STATEMENT**

1.  This civil rights case seeks redress for the violation of Plaintiff Mark Foust's Fourth and
Fourteenth Amendment constitutional rights. This case further seeks redress for federal
and state law claims of civil conspiracy. The violation of Mr. Foust's state and federal
rights occurred on November 15, 2016 in Twinsburg, Ohio. On that day, Defendant
Twinsburg police officers Sergeant Mark Kreiger, Detective Brian Donato, Detective
Alan Ternosky, Patrolman Krejci and/or John Does #1-4, violated Mr. Foust's Fourth and
Fourteenth Amendment rights when they illegally and unreasonably searched and seized
him, while on duty, without justification and without probable cause. There was no
legitimate or legal justification for these Defendant Officers to illegally and
unconstitutionally search and seize Mr. Foust. Mr. Foust was unarmed. There was never
any suspicion that Mr. Foust was armed, and the search obviously did not happen because
he was thought to be armed. Mr. Foust did not pose a threat at the time of the illegal
search and seizure. Mr. Foust was honest, completely compliant, and was even extremely
helpful to Defendant Officers. However, he never gave consent for any search of his
person, car, or personal belongings. Mr. Foust brings this civil rights action to secure fair
compensation and to encourage Twinsburg officers to refrain from the unconstitutional,
unnecessary, illegal, gratuitous, unreasonable, and excessive searches and seizures of
lawful, compliant, unarmed and non-threatening citizens in the future.

2.  Defendants Ternosky, Krejci, and/or John Does #1-4, despite being required to do so, had
knowledge of the conduct of Defendants Kreiger and Donato, and/or John Does #1-4, yet

deliberately failed to report, address or even mention in any police report, the unconstitutional search and seizure employed by Defendants Kreiger and Donato, and/or John Does #1-4.

3. The violation of Mr. Foust's Fourth Amendment rights occurred because Defendant City of Twinsburg has a policy, practice, and custom of allowing its officers to illegally search and seize citizens to harass, embarrass, intimidate, and interrogate without having to follow the legal procedures to search, seize, and/or arrest its citizens.

4. This policy, pattern, and practice was the moving force behind the deprivation of Mr. Foust's constitutional rights.

5. Defendants Kreiger's, Donato's, Ternosky's, Krejci's and John Does #1-4's illegal and unconstitutional conduct was known, approved and ratified by agents /employees of the Defendant City of Twinsburg who then failed to conduct a meaningful and adequate investigation into the Defendant officers' illegal search and seizure of Mr. Foust.

6. The City of Twinsburg and its law enforcement officers demonstrate a pattern and practice by the City of Twinsburg of failing to adequately train, adequately supervise, and failing to investigate and discipline its police officers related to illegal and unconstitutional searches and seizures.

7. The inadequate training of Twinsburg police officers by the Defendant City of Twinsburg amounts to deliberate indifference to the rights of those individuals that come into contact with Twinsburg police officers.

## II.    JURISDICTION

8. Jurisdiction over claims arising from Defendants' violation of the Civil Rights Act is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

9. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367.

10. Venue is proper in this division.

### III.    THE PARTIES

11. Plaintiff Mark Foust II, was a resident of Summit County, Ohio during all times relevant to this action. He brings this action on his own behalf for damages resulting from the violation of rights secured by the United States Constitution.

12. Defendant City of Twinsburg is a unit of local government organized under laws of the State of Ohio. Defendant City of Twinsburg is also a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

13. Defendant Sergeant Mark Kreiger was at all times relevant to this action an employee of the City of Twinsburg, Ohio police department. Defendant Kreiger is sued in his individual and official capacities. Defendant Kreiger is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

14. Defendant Detective Brian Donato was at all times relevant to this action an employee of the City of Twinsburg, Ohio police department. Defendant Donato is sued in his individual and official capacities. Defendant Donato is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

15. Defendant Detective Alan Ternosky was at all times relevant to this action an employee of the City of Twinsburg, Ohio police department. Defendant Ternosky is sued in his individual and official capacities. Defendant Ternosky is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state laww.

16. Defendant Patrol Officer Michael Krejci was at all times relevant to this action an employee of the City of Twinsburg, Ohio police department. Defendant Krejci is sued in

his individual and official capacities. Defendant Krejci is a person under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state law.

17. John Does #1-4 were at all times relevant to this action employees of the City of Twinsburg, Ohio police department. They were serving as on-duty police officers on November 15, 2016. John Does #1-4 are sued in their individual and official capacities. They are persons under 42 U.S.C. §1983 and at all times relevant to this case acted under color of state laws

## IV. <u>FACTS</u>

18. On November 15, 2016, Mark Fitzgerald Foust went to visit his cousin at Pebble Creek Apartments in Twinsburg, Ohio.

19. Mr. Foust was going to pay his cousin back some money that he owed him.

20. When Mr. Foust pulled into the parking lot, his cousin was already in his car with a friend.

21. Mr. Foust got into the back seat, talked to his cousin for a little, paid his cousin back the money, and got back into his own car to follow his cousin to a friend's house.

22. Mr. Foust drove to exit the parking lot when, from out of nowhere, a car pulled out of a parking spot and blocked Mr. Foust from exiting the parking lot.

23. From there, things got much scarier for Mr. Foust.

24. Defendant Donato, who had been conducting surveillance at the apartments due to recent burglaries in the area, decided to stop Mr. Foust despite no suspicion that Mr. Foust had participated in any burglary during his short time at Pebble Creek on November 15, 2016.

25. Instead, he wrote in his report that Mr. Foust's behavior was consistent with a narcotics transaction.

26. Defendant Donato jumped out of the car, pulled up his shirt to flash a badge, pointed a gun at Mr. Foust, and told him to get out of the car.

27. Fearing he might get shot, Mr. Foust slowly exited his car. As Defendant Donato accosted him, Mr. Foust was restrained, unable to walk away, and was seized.

28. Mr. Foust tried to explain that he was there to visit his cousin and that they were all leaving together to go to a friend's house.

29. Defendant Donato completely ignored Mr. Foust's very reasonable explanation.

30. Mr. Foust told Defendant Donato that he was a college student and graduated from Twinsburg High School the year before.

31. Again, Defendant Donato ignored Mr. Foust.

32. Defendant Donato then asked Mr. Foust if he had identification on him. Mr. Foust answered in the affirmative and went to reach slowly into his pocket so that he could show Defendant Donato his identification.

33. Defendant Donato suddenly stopped Mr. Foust and, without permission, reached into Mr. Foust's pocket himself and pulled out Mr. Foust's wallet.

34. Defendant Donato then asked Mr. Foust if he had any drugs to which Mr. Foust truthfully responded that he did not.

35. Mr. Foust again tried to explain that he was only there to see his cousin and that they were leaving together to go visit a friend.

36. Defendant Donato again ignored Mr. Foust's reasonable explanation.

37. Defendant Donato then again without permission, searched Mr. Foust's person.

38. Defendant Donato found absolutely no evidence on Mr. Foust that he had been involved in a drug transaction.

39. Instead of stopping there and letting Mr. Foust leave, Defendant Donato then, without permission, began searching Mr. Foust's car and personal belongings inside the car.

40. Without permission, Defendant Donato searched through Mr. Foust's backpack which contained nothing but Mr. Foust's school books.

41. In fact, Defendant Donato's illegal search turned up nothing that was consistent with Mr. Foust being involved in a drug transaction. His illegal search actually supported Mr. Foust's version of events.

42. Again, instead of stopping there and letting Mr. Foust leave because he had done nothing wrong, Defendant Donato told Foust to sit on the curb and "don't do anything stupid" while he called for backup.

43. It was clear – Mr. Foust was being detained against his will and he was not free to leave.

44. Shortly thereafter, at least two more officers arrived at the scene.

45. Defendant Kreiger asked Defendant Donato if he had already searched Mr. Foust and Defendant Donato told Defendant Kreiger, "Yes, but you can check him again."

46. Defendant Kreiger then proceeded without permission to search Mr. Foust again. He patted Mr. Foust down again and took everything out of his pockets.

47. Again, no drugs or contraband were found.

48. Defendant Kreiger then told Mr. Foust that he was going to "shake his basketball shorts real good and if anything comes out it's a felony because you said you have nothing on you."

49. Again, no drugs or contraband were found.

50. After shaking his shorts, Defendant Kreiger then made Mr. Foust pull his underwear out and show him his privates.

51. Again, no drugs or contraband were found.

52. Mr. Foust was illegally and unconstitutionally forced by Defendant Kreiger to expose his penis and testicles right out on the street.

53. While Defendant Donato forced Mr. Foust to expose himself in public, he told Mr. Foust, "Keep your shit in Cuyahoga County."

54. While this disgusting act was happening, Defendants Donato, Ternosky, Krejci, and/or John Does #1-3 were searching through Mr. Foust's car for the second time.

55. Again, no drugs or contraband were found.

56. In fact, the repeated illegal and unconstitutional searches of Mr. Foust's body, pockets, car, and backpack turned up nothing that was consistent with Mr. Foust being involved in a drug transaction.

57. Instead of stopping there and letting Mr. Foust leave because he had done nothing wrong, Defendant Donato then made Foust unlock his phone and give it to him.

58. Mr. Foust had no choice but to hand over his phone.

59. Defendant Donato then ordered Mr. Foust to go and sit in the back of the police car even though it was clear that Mr. Foust had done nothing wrong.

60. After sitting in the vehicle for approximately ten minutes, Defendant Donato came to the car and told Mr. Foust that they were investigating burglaries in the area and asked Foust to tell him what he knew about the burglaries.

61. Mr. Foust relayed any information he thought would be helpful, proving that he had nothing to do with the burglaries.

62. Once again, instead of stopping there and letting Mr. Foust leave because he had done nothing wrong, Defendant Donato then told Mr. Foust to follow him to the police station.

63. Defendant Donato then took Mr. Foust's wallet and phone to make sure he followed him.

64. When Mr. Foust arrived at the Twinsburg Police Department he was taken into an interrogation room and interrogated more about the burglaries.

65. Now that no proof of a drug transaction was found, the Defendant Officers decided to accuse Mr. Foust of burglaries.

66. Defendant John Doe #4 came into the interrogation room and told Foust that he was not under arrest and that he was free to leave, and then asked Defendant Donato if Mr. Foust had been read his rights.

67. Mr. Foust was never read his rights.

68. Clearly, Mr. Foust was not free to leave as Defendant Donato was still in possession of Mr. Foust's phone and wallet.

69. Mr. Foust was then questioned about the burglaries and threatened with a polygraph test. Defendant John Doe #4 then took possession of Mr. Foust's phone, made Mr. Foust unlock it, and began searching through Mr. Foust's text messages and social media.

70. Mr. Foust was then moved to another room with Defendant Kreiger who made Mr. Foust write a statement.

71. Mr. Foust was then told by Defendant Kreiger that there was no need for him "to go telling people what happened."

72. After being detained for an unreasonable amount of time, 45 minutes, Mr. Foust had his phone returned to him and was finally free to leave.

## V. CLAIMS

### FIRST CAUSE OF ACTION 42 U.S.C. § 1983 ILLEGAL AND UNREASONABLE SEARCH AND SEIZURE

73. Each of the paragraphs of this Complaint is incorporated as if fully restated herein.

74. Mark Foust was subjected to an unreasonable search and seizure of his person in violation of the Fourth and Fourteenth Amendments to the United.

75. Mr. Foust had a right to be free from unreasonable searches as seizures under the Fourth and Fourteenth Amendments to the United States.

76. Defendants' conduct in seizing Mr. Foust without any legal justification violated Mr. Foust's rights under the Fourth and Fourteenth Amendments to the United States.

77. Defendants' conduct in searching Mr. Foust's person, car, phone, and personal belongings without permission, without a warrant, and without any other legal justification violated Mr. Foust's rights under the Fourth and Fourteenth Amendments to the United States.

78. Defendant Kreiger's conduct in forcing Mr. Foust to show him his privates and expose his penis and testicles in public without any legal justification violated Mr. Foust's rights under the Fourth and Fourteenth Amendments to the United.

## SECOND CAUSE OF ACTION 42 U.S.C. § 1983 MONELL CLAIM FOR DEFENDANT CITY OF TWINSBURG

79. Defendant City of Twinsburg's policies, practices, and customs regarding searches, seizures, arrests, and the documentation of such were a moving force behind the illegal search and seizure of Mr. Foust by Defendants Kreiger, Donato, Ternosky, Krejci, and John Does #1-4.

80. Defendant City of Twinsburg customarily allows its officers to illegally search and seize citizens to harass, embarrass, intimidate, and interrogate without having to follow the legal procedures and without being held accountable or disciplined for their misconduct.

81. Defendant City of Twinsburg failed to institute adequate municipal policies, procedures, and customs regarding searches and seizures.

82. Defendant City of Twinsburg failed to institute adequate municipal policies, procedures, and customs for officers regarding the accuracy of individual officer reports when illegal searches and seizures are observed.

83. Defendant City of Twinsburg failed to adequately train officers how to write complete, accurate, and truthful reports.

84. Defendants Kreiger's, Donato's, Ternosky's, Krejci's and John Does #1-4's illegal and unconstitutional conduct was known, approved and ratified by agents /employees of the Defendant City of Twinsburg who then failed to conduct a meaningful and adequate investigation into the Defendant officers' illegal search and seizure of Mr. Foust.

85. Defendant City of Twinsburg and its law enforcement officers demonstrate a pattern and practice by the City of Twinsburg of failing to adequately train, adequately supervise, and failing to investigate and discipline its police officers related to illegal and unconstitutional searches and seizures.

86. The inadequate training of Twinsburg police officers by the Defendant City of Twinsburg amounts to deliberate indifference to the rights of those individuals that come into contact with Twinsburg police officers.

87. This pattern and practice of Defendant City of Twinsburg is illustrated by the following cases:

   a. Payne v. Krejci, et al., 5:17-CV-00428: City of Twinsburg police officers Krejci (also in this case) and Fidoe knocked on Ms. Payne's door on Thanksgiving looking for her son. She informed officers she had just gotten home and that her

elderly father was arriving soon to join her for Thanksgiving. Officers Krejci and Fidoe that they did not need a warrant to come in her home. They then told her to step out or they were going to pull her out. Without any legal justification, officers Krejci and Fidoe then forced their way into Ms. Payne's home and hand cuffed her.

b. Castagnola v. Walsh, et al., 5:17-CV-899: City of Twinsburg police officer Alan Terosky (also in this case) received information for a police source. Detective Kreiger (also in this case) sought an arrest warrant for Mr. Castagnola and a warrant to search his residence. The Ohio Supreme Court reversed Mr. Castagnola's convictions based upon a constitutionally invalid search and seizure of Mr. Castagnola's property. (2015-Ohio-1565) Mr. Castagnola spent two and a half years in prison as a result of the illegal search and seizure.

c. Saddle v. Cuyahoga Falls Concerts, Inc. et al., 1:04-CV-02034: A 49 year old business man, husband, and father of two at a Grateful Dead concert at Blossom Music Center was falsely imprisoned by City of Twinsburg police officer Mark Kreiger (also in this case) and other officers. Defendant officers were working undercover and, without properly identifying themselves, rushed Mr. Saddle and his 52 year old friend and threw Mr. Saddle to the ground.

d. Cornell v. City of Twinsburg, 5:16-CV-02543: Mr. Cornell alleged that Defendant City of Twinsburg impeded and threatened his right to be free from warrantless searches without probable cause by maintain, implementing, and enforcing vague policies that threaten him with warrantless searches.

e.  McGrew v. City of Twinsburg, et al., 5:09-CV-01334: Plaintiff's Complaint states that it is undisputed that on the weekend of April 30, 2007, Twinsburg Police Department entered their residence of 1621 Ridgewood Court, Twinsburg, without just cause, permission, probable cause and/or warrant while the residents were out of town. It also states that it is undisputed that on or about April 27, 2007, Twinsburg Police entered the residence of 1621 Ridgewood Court again without just cause, probable cause, and/or warrant and did in fact remove a fan. It further states that it is undisputed that on or about the month of August Twinsburg Police officer Jeffrey Hayes did in fact come to 1621 Ridgewood Court and without just cause, probable cause, and/or warrant did attempt to enter the residence of 1621 Ridgewood Court.

88. The above cases, like Plaintiff Foust's, demonstrate that the custom and policy of the City of Twinsburg's Police Department is to arrive, search whatever they want – persons, homes, vehicles, personal belongings – and fail to follow the parameters set by the Constitution of the United States. This is done even when the person has committed no crime.

89. This behavior is so permanent and well settled that it constitutes a custom and policy of the City of Twinsburg and the Twinsburg Police Department.

90. This policy is the moving force behind the injuries suffered by Mr. Foust.

91. This well settled string of unlawful searches and seizures demonstrates a pattern and practice by the City of Twinsburg of failing to adequately train, adequately supervise3, and failing to investigate and discipline its police officers when it comes to unlawful searches and seizures.

92. Twinsburg Police Officers' conduct related to unlawful searches and seizures is ratified by Defendant City of Twinsburg.

## THIRD CAUSE OF ACTION FALSE IMPRISONMENT

93. Each of the paragraphs of this Complaint is incorporated as if fully restated herein.

94. Defendants intentionally detained Mr. Foust.

95. Defendants' detention of Mr. Foust was unlawful.

96. There was obviously no probable cause to arrest Mr. Foust because Defendants never arrested him.

## FOURTH CAUSE OF ACTION CIVIL CONSPIRACY UNDER 42 U.S.C. § 1983

97. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

98. Defendants, through concerted action, by plan, and with a conspiratorial objective have deprived and continue to deprive Plaintiff of his constitutional rights. Overt acts by Defendants include reports filed which did not and do not memorialize with adequate accuracy the unreasonable search and seizure of Mr. Foust, his lack of consent to the searches, that he was never free to leave because Defendant Officers retained his personal property of Mr. Foust. Each acted in concert to remain silent regarding the level and degree of force. Observing officers acted in concert when they failed to stop the illegal search and seizure of Mr. Foust.

## FIFTH CAUSE OF ACTION CIVIL CONSPIRACY UNDER OHIO LAW

99. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

100.     Defendant Officers who unreasonably searched and seized Mr. Foust are engaged in a conspiracy under Ohio Law. They have acted maliciously and in concert to injure Mr. Foust. Each officer acted in concert by failing to accurately report as police officers the unreasonable search and seizure and the unconstitutional conduct of Defendant officers, despite a duty to do so.  Each Defendant officer acted in concert by remaining silent regarding the unconstitutional conduct.  Observing Defendant officers acted in concert by failing to stop the unconstitutional conduct. The actions of Defendants have resulted in actual damages to Mr. Foust by frustrating and delaying this legal action.

## VI. <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury of all issues triable by jury.

## VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands that this Court:

A.     Award Plaintiff compensatory damages in an amount to be shown at trial;

B.      Plaintiff punitive damages in an amount to be shown at trial;

C.     Award Plaintiff reasonable attorney's fees, costs and disbursements;

D.     Pre and post judgment interest;

E.     Grant Plaintiff such additional relief as the Court deems just and proper.

/s/ Sara Gedeon
David B. Malik (0023763)
Sara Gedeon (0085759)
8437 Mayfield Road Suite 101
Chesterland, Ohio 44026
(440) 729-8260
(440) 490-1177
dbm50@sbcglobal.net
sgedeon1021@gmail.com