1
2
3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

4    MARK FOUST, II,

5                Plaintiff,              Case No. 5:17CV2350
                                         Akron, Ohio
6          vs.                           Wednesday, February 14, 2018
                                         3:10 p.m.
7    CITY OF TWINSBURG, ET AL.,

8                Defendants.

9

10           TRANSCRIPT OF CASE MANAGEMENT CONFERENCE
             BEFORE THE HONORABLE JOHN R. ADAMS
11               UNITED STATES DISTRICT JUDGE

12
     APPEARANCES:
13
     For the Plaintiff:   Sara M. Gedeon
14                         Law Office of David B. Malik
                           8437 Mayfield Road
15                         Chesterland, Ohio 44026
                           (440) 729-8260
16
     For the Defendants:  James M. Popson
17                         Sutter O'Connell - Cleveland
                           3600 Erieview Tower
18                         1301 East Ninth Street
                           Cleveland, Ohio 44114
19                         (216) 982-2200

20   Court Reporter:       Caroline Mahnke, RMR, CRR
                           Federal Building & U.S. Courthouse
21                         2 South Main Street, Suite 568
                           Akron, Ohio 44308
22                         (330) 252-6021

23

24

25   Proceedings recorded by mechanical stenography; transcript
     produced by computer-aided transcription.

1          Wednesday, February 14, 2018

2               THE COURT:  For the record, the Court has before

3     it today Case Number 5:17CV2350.  The case is Mark Foust, II

4     versus the City of Twinsburg and other individually named

5     officers, law enforcement officials from the defendant.

6               We're here today for a case management conference.

7               Counsel for the plaintiff, if you'd take a few

8     moments -- I'll direct this to all counsel.  You can remain

9     seated.  Use the microphones, if you would.  The bright

10    green light on the base of the microphone indicates it's

11    working.

12              And we'll begin with the plaintiff's counsel.  Take a

13    few moments.  I did read the pleadings.  I'm generally aware

14    of the nature of the claims.  If you would, why don't you

15    give me just an overview and then go from there.

16              MS. GEDEON:  Thank you, Your Honor.  Sara Gedeon

17    for the plaintiff.

18              THE COURT:  You need to press -- is the bright

19    green light on, on the base of the microphone?

20              MS. GEDEON:  Oh, okay.  I'm sorry.

21              Your Honor, this is Sara Gedeon for the plaintiff.

22    This lawsuit addresses the violation of Mr. Foust's Fourth

23    and Fourteenth Amendment constitutional rights to be free of

24    illegal search and seizure.

25              Mr. Foust was suspected initially of having possibly

1    participated in a drug deal.  However, the officers involved

2    in this case went well beyond the scope of what was legal

3    when they detained him and went so far as to search his car

4    numerous times, have him become undressed on the street.

5    And then, although they voluntarily claim that he went to

6    the police department, they actually seized his I.D. and his

7    phone, I believe, so that he would go to the police station

8    where they further detained him.

9         THE COURT:  Is there any video, any body cam, or

10   any video at the police station?

11        MS. GEDEON:  Your Honor, we just found out today

12   that there might be.  I have not seen it nor has defense

13   counsel that I'm aware of.

14        THE COURT:  What do you mean by "might be"?

15        MR. POPSON:  Because I haven't --

16        THE COURT:  Why don't we do the same thing.

17   Press the base of the microphone.

18        MR. POPSON:  Because I haven't seen it yet

19   myself, Your Honor, but I have information that we do have

20   it, that we do have some video in any event.  But I have not

21   personally seen it yet.

22        THE COURT:  You know, I want to be cautious, but

23   this case was filed in November, right?

24        So why is it that the police department didn't turn

25   over the video of this incident immediately to counsel so

 1   that we could have a more meaningful discussion today?

 2   Because the video literally is something important enough

 3   that would shed a great deal of light on what occurred here

 4   and whether the plaintiff's account of what transpired is

 5   accurate, whether the defendant's account is accurate.

 6        So is there some reason why you don't have the video

 7   yet?

 8             MR. POPSON:  No, I don't have a reason.

 9             THE COURT:  Well, what about your representatives

10   there?  Is there some reason why those of you from Twinsburg

11   haven't promptly turned over the video to your counsel?

12        Anyone care to address the Court?

13             MR. MAISTROS:  David Maistros, Your Honor, law

14   director for the City of Twinsburg.

15        It is my understanding that the officers were wearing

16   body camera, those that were in uniform, so there are

17   videos.  But quite frankly, we just haven't gotten it to

18   counsel where those have been turned over.

19             THE COURT:  Tell you what we're going to do,

20   counsel.  You're going to pay the plaintiff's attorney fees

21   and you're going to bring that video.  You're going to turn

22   it over to your counsel, and we're going to get that video

23   here forthwith so that they can evaluate this case, so you

24   can evaluate this case, so we all know what goes on in this

25   case.

1      With all due respect, it's really not appropriate, at

2   least in my mind, to have the video, knowing you're facing a

3   federal lawsuit, knowing that you have officers who are

4   named, claims that are made, and you have some of

5   the -- perhaps the best piece of evidence available, and

6   here we are in February and you haven't turned it over to

7   your counsel and you haven't turned it over to the

8   plaintiff.

9      So we are going to set this over and continue it.  And

10  then I'm going to order that forthwith, within -- how many

11  days is it going to take to have this produced?

12     Have you seen it?

13          MR. MAISTROS:  I've seen some of them, Your

14  Honor, yes.

15          THE COURT:  When did you see them?

16          MR. MAISTROS:  I saw them when -- prior to the

17  filing of the lawsuit, Ms. Gedeon made a public records

18  request.  And my understanding was she requested these.

19          THE COURT:  Well, did she get them?

20          MS. GEDEON:  I did.  I never got them, though.

21          THE COURT:  So there is another reason why.  She

22  makes a public records request and she doesn't get them as

23  of yet?

24     Counsel, do you want to comment on that?

25          MR. POPSON:  Well, it was my understanding

1    earlier today that they were sent.  I did not know that she

2    didn't have them until today.

3              THE COURT:  When were they sent?

4              MR. POPSON:  I don't have the records here of the

5    public records request in front of me right now.  I don't

6    know when -- we'd have to go and look.

7         But we thought -- it was my understanding that they

8    had been sent on a public records request.

9              THE COURT:  I'm sorry.  If I sound incredulous

10   and/or perturbed, I am, because we've wasted a lot of time

11   here today on a case that we could decipher a great deal

12   about how this case should proceed.

13        And with all due respect, if there is any fault to be

14   assessed, I know where the fault lies.

15        So, counsel, we'll set this matter over.  I expect

16   everyone to be back here, and I expect that video to be back

17   here, meaning you'll provide the Court with a copy of the

18   disk with all of the video.  You'll provide counsel for the

19   plaintiff a copy.  It will be done within seven days.  She

20   should have had it long before then if she made a public

21   records request.

22        So we'll look forward to seeing it on or before 4:00

23   next Wednesday.

24        If you don't have the video by that point in time, you

25   file a motion.  You let us know.

```
 1              MS. GEDEON:  Okay, Your Honor.

 2              THE COURT:  You go back and check your records.

 3     You make certain you didn't receive it.

 4         If you filed that records request -- that was going to

 5     be my next question, was, well, what did you get out of the

 6     public record?  Did you make a public records request?  Did

 7     you get all the reports?  Did you get all the pertinent

 8     information?

 9             That's always enlightening in these cases.

10              MS. GEDEON:  Your Honor, I do not have the public

11     records request in front of me.  But just routinely we do

12     request all reports, all audio, all video, all 911 calls.

13     Usually our list is pretty extensive.

14         I will go back and make sure that I do not have the

15     videos.  But I do not recall seeing any videos.  I have a

16     very small stack of police reports that I received in

17     response to our public records request along with consulting

18     and speaking with my client.  And that's where we formed the

19     basis of the complaint.

20              THE COURT:  You'll go back and take a look and

21     see if you made the formal request.  The rules require

22     initial disclosures in any event.  And forget about the

23     rules.  Just think about common sense.  Common sense is you

24     produce the video so that we all can see and be well aware

25     of what transpired here and get a better understanding of
```

1    the events in question.

2          So pull your calendars.  We'll set the matter over for

3    another date and time.  We'll all come back together.  By

4    that time we'll all have the video.  We'll all look at it

5    and decide exactly what we're going to do with this case and

6    how it's going to proceed.

7          Pull your calendars.

8          Jonathan, ten days from today or thereabouts.

9          We need to do this before March.

10         (Pause.)

11               THE COURT:  10:00 a.m. on February 27.

12               MS. GEDEON:  I'll make it work, Your Honor.

13               THE COURT:  Counsel?

14               MR. POPSON:  As soon as it boots up.  I shut it

15    off, Your Honor.

16               THE COURT:  That's fine.  Wait until it boots up.

17               MR. POPSON:  February 27 I'm available, Your

18    Honor.

19               THE COURT:  10:00 a.m.  I'll expect everyone to

20    be present, officers involved, individuals with full

21    settlement authority.

22         Have you made a demand in the case --

23               MS. GEDEON:  Yes, Your Honor.

24               THE COURT:  -- pursuant to the Court's order?

25         What's been the demand?

1        MS. GEDEON:  I'm sorry?

2        THE COURT:  What's been your demand?  I'm sorry.

3   Go ahead.

4        MS. GEDEON:  We submitted a demand to defense

5   counsel on January 17 in the amount of $85,000.

6        THE COURT:  And based on?  Just your evaluation

7   of the case?  Or how do you come up with that number?

8        MS. GEDEON:  Yes, Your Honor.  Several different

9   things play into it.

10        THE COURT:  Does that include your attorney fees

11   and other issues?

12        MS. GEDEON:  We have -- yes.  And Your Honor, I

13   have not -- I did not know if I was supposed to file the

14   preliminary estimate, but I've shared it with my client and

15   defense counsel.  And that did play a part into it where we

16   figured -- we figured out that that would probably be

17   somewhere around the cost to try this case, too.

18        THE COURT:  $85,000 in attorney fees?

19        MS. GEDEON:  And expenses.

20        THE COURT:  That's probably low.

21    Counsel, what's been the offer?

22        MR. POPSON:  The offer is $5,000 right now.

23        THE COURT:  All right.  Well, we'll have the

24   video.  And hopefully both sides will have a better idea of

25   the strengths and weaknesses of the case.  And then if you

1    wish to negotiate further, you're free to do that.

2            So we'll see you on the 27th.  There has been full

3    initial disclosures.  I will expect both sides, counsel, any

4    information that you have under the rule, initial

5    disclosures, you make them.

6                MS. GEDEON:  We have, Your Honor.

7                THE COURT:  You have?

8                MS. GEDEON:  Yes.

9                THE COURT:  Make sure you have.

10            Counsel for the defendants, all reports, public

11    records, all of that will be produced by next Wednesday to

12    counsel for the plaintiff.

13            Initial disclosures make those kind of requirements.

14    Have them present.

15            We will look forward to seeing the video.  Both sides

16    take a look at them.  Determine what kind of effect that has

17    on the case.  I'll look at all the videos as well so that I

18    can be fully prepared.

19            That's how we will proceed.

20            Thank you very much.

21                MS. GEDEON:  Thank you, Your Honor.

22                THE COURT:  You're welcome.

23            (Proceedings concluded at 3:30 p.m.)

24

25

1                     C E R T I F I C A T E

2

3           I certify that the forgoing is a correct

4    transcript from the record of proceedings in the

5    above-entitled matter.

6

7              S/Caroline Mahnke            2/15/2018

8              Caroline Mahnke, RMR, CRR        Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25